1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JENNIFER HELLUMS,

                    Plaintiff,

v.

MACY'S WEST STORES, INC., et al.,

                    Defendants.

CASE NO. C13-5304 BHS

ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

       This matter comes before the Court on Defendant Macy's West Stores, Inc.'s

("Macy's") motion for summary judgment (Dkt. 22). The Court has considered the

pleadings filed in support of and in opposition to the motion and the remainder of the file

and hereby grants the motion for the reasons stated herein.

## I. PROCEDURAL HISTORY

       On March 20, 2013, Plaintiff Jennifer Hellums ("Hellums") served Macy's with a

complaint alleging (1) constructive discharge, (2) sexual harassment in violation of the

Washington Law Against Discrimination, RCW Chapter 49.60 ("WLAD"), and (3) a

violation of the Washington Consumer Protection Act, RCW Chapter 19.86 ("CPA").[1]

Dkt. 1, Exh. A.

---

[1] Hellums dropped the CPA claim during the course of this proceeding.  *See* Dkt. 22 at 16.

1      On August 20, 2014, Macy's filed a motion for summary judgment.  Dkt. 22.  On

2  September 8, 2014, Hellums responded.  Dkt. 27.  On September 12, 2014, Macy's

3  replied.  Dkt. 29.

4                             **II. FACTUAL BACKGROUND**

5      In early 2011, Macy's hired Hellums at its Tacoma mall store to sell clothes.  Dkt.

6  28-1, Deposition of Jennifer Hellums ("Hellums Dep.") at 26–27.  Hellums subsequently

7  transferred to the cosmetics department.  *Id*. at 27–29.

8      In May to August of 2012, Hellums claims that she was harassed by a coworker,

9  Merife DiPierro.  Hellums alleges that the first incident was in late May 2012 when Ms.

10  DiPierro touched Hellums twice in the vaginal area while they were at the cosmetics

11  counter in front of two other coworkers, Sally Morris and Rosa Aslanyan.  *Id*. at 94–96.

12  Hellums did not report this incident to either the human resources ("HR") department or

13  her management.

14      In late July of 2012, Hellums informed a coworker, Kris Pak, about the incident

15  with Ms. DiPierro.  Ms. Pak then told another coworker, Doris Hannah, of the incident.

16  On August 3, 2012, Ms. Hannah told Ms. DiPierro what Ms. Pak had told her about the

17  alleged incident between Hellums and Ms. DiPierro.  Upon hearing this story, Ms.

18  DiPierro informed the Macy's HR Director for her store, Kathy Mihok, that Hellums said

19  that Ms. DiPierro had "fingered" her in the genital area. Dkt. 28-4.  Later that same day,

20  Ms. Mihok began her investigation.  *Id*.  She interviewed Ms. Hannah, Ms. Pak, Ms.

21  Morris, and Hellums regarding the sexual assault allegations.  *Id*.

22

1    During Ms. Mihok's initial investigation, Ms. DiPierro denied that she sexually

2  touched Hellums and claimed that Hellums defamed her character.  *Id.*  However, both

3  Ms. Morris and Hellums stated that Ms. DiPierro twice pushed her hand into Hellums's

4  genitals.  Dkt. 28-3 at 8–10.  Based on the investigation, Ms. Mihok and the District

5  Director of HR, Debbi Fontana, were unable to determine whether the incident actually

6  happened and declined to issue corrective action.  Dkt. 28-5 at 26.  Ms. Mihok was

7  leaving on vacation and told the involved employees "to stop the gossip."  *Id.* at 28.  Ms.

8  Mihok continued her investigation after she returned from her two-week vacation.

9    After the investigation, Hellums claims that Ms. DiPierro began telling other

10  employees that she was going to harm Hellums.  Specifically, two employees told

11  Hellums that DiPierro was claiming that she was going to physically assault Hellums.

12  Dkt. 28-6 at 7.  Although this was disclosed on August 3, 2012, Hellums did not report

13  the rumors until August 8, 2012.  *Id.*  Hellums also claims that sometime between August

14  3, and August 8, Ms. DiPierro tried to hit Hellums with her car in the mall parking lot.

15  Hellums Dep. at 125–129.  Although there is no record of this conversation, Hellums

16  claims that she called Ms. Mihok and reported the incident in the parking lot.  *Id.*

17  Hellums also claims that Ms. Mihok told her to stop talking about the situation and to

18  mind her own business.  *Id.* at 126.

19    On August 14, 2014, Hellums submitted her resignation form through a coworker.

20  Dkt. 28-6 at 9.  Hellums stated various reasons for leaving, one of which because of a

21  "hostile work environment."  *Id.*  Although Hellums's last day at work was August 8, her

22  resignation became effective August 27, 2012.

# III. DISCUSSION

Macy's moves for summary judgment on Hellums's claims for hostile work environment and constructive discharge.

## A.    Summary Judgment Standard

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477

1   U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630.  The Court must resolve any factual

2   issues of controversy in favor of the nonmoving party only when the facts specifically

3   attested by that party contradict facts specifically attested by the moving party.  The

4   nonmoving party may not merely state that it will discredit the moving party's evidence

5   at trial, in the hopes that evidence can be developed at trial to support the claim.  *T.W.*

6   *Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255).  Conclusory,

7   nonspecific statements in affidavits are not sufficient, and missing facts will not be

8   presumed.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

9   **B.     Hostile Work Environment**

10          To establish a hostile work environment claim, a plaintiff must prove the

11  harassment (1) was unwelcome, (2) was because he or she is a member of a protected

12  class, (3) affected the terms and conditions of his or her employment, and (4) was

13  imputable to his or her employer.  *Crownover v. Dep't of Transp.*, 165 Wn. App. 131,

14  145 (2011).  For sexual harassment claims, the harassment must have occurred "because

15  of sex."  *Robel v. Roundup Corp.*, 148 Wn.2d 35, 45 (2001).

16          In this case, Hellums contends that issues of material fact exist on all elements of

17  her claim.  Dkt. 27 at 6–20.  Hellums, however, fails to meet her burden on multiple

18  elements.  First, the parties dispute whether the parking lot incident was because of

19  Hellums's sex.  Macy's presents the better argument that this incident was because of the

20  investigation, but there is some case law to support the proposition that the alleged act of

21  Ms. DiPierro can be considered as a continuing of harassment.  *See, e.g., Perry v. Costco*

22  *Wholesale, Inc.*, 123 Wn. App. 783, 799 (2004) ("subsequent actions of a harasser that,

1    by themselves might not constitute harassment, may be viewed as such following

2    extreme actions that would reasonably lead the victim to believe the harasser could do

3    anything.").  However, even if this act is considered actionable harassment in the totality

4    of the circumstances, Hellums fails to show that questions of fact exist as to the elements

5    of altering the terms of her employment and whether the conduct is imputable to Macy's.

6        "[T]he harassment must be sufficiently pervasive so as to alter his or her working

7    conditions." *Crownover*, 165 Wn. App. at 145.  "It is not sufficient that the conduct is

8    merely offensive." *Id.*  "A hostile work environment claim involves a workplace

9    atmosphere so discriminatory and abusive that it unreasonably interferes with the job

10    performance of those harassed." *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th

11    Cir. 2000).  "The working environment must both subjectively and objectively be

12    perceived as abusive." *Id.*

13          To determine whether the harassment is such that it affects the conditions
          of employment, we consider: the frequency and severity of the

14          discriminatory conduct; whether it is physically threatening or humiliating,
          or a mere offensive utterance; and whether it unreasonably interferes with

15          an employee's work performance.  Casual, isolated or trivial manifestations
          of a discriminatory environment do not affect the terms or conditions of

16          employment to a sufficiently significant degree to violate the law.

17    *Washington v. Boeing Co.*, 105 Wn. App. 1, 10 (2000).

18        In this case, Hellums has only shown isolated events that no reasonable juror

19    would consider to have objectively altered the conditions of her employment.  In fact,

20    Hellums did not report the inappropriate touching when it occurred.  Although she states

21    that she informed Ms. DiPierro that it was inappropriate and to not do it again, Hellums

22    has submitted no evidence that the touching affected the conditions of her employment.

1    With regard to the parking lot incident, there is also an absence of evidence that it altered

2    the conditions of her employment.  Therefore, the Court grants Macy's motion on this

3    element of Hellums's claim.

4            With regard to whether the conduct was imputable to Macy's, Hellums has also

5    failed to meet her burden.  On this element, Hellums must show that Macy's "(1)

6    authorized, knew, or should have known about a supervisor's or co-worker's harassment

7    because it was open or obvious and (2) failed to take reasonably prompt and adequate

8    corrective action."  *Crownover*, 165 Wn. App. at 146.  "The employer's liability, if any,

9    runs only from the time it 'knew or should have known about the conduct and failed to

10   stop it.'"  *Swenson v. Potter*, 271 F.3d 1184, 1192 (9th Cir. 2001).

11           In this case, Macy's became aware of the offensive conduct on August 3, 2012.

12   Once HR was informed of the inappropriate touching, an immediate investigation was

13   conducted.  Hellums contends that this investigation was not prompt and thorough

14   because it was suspended for two weeks while Mihok was on vacation.  Dkt. 27 at 16–18.

15   This argument is baseless because courts have held that two-month investigations are

16   sufficient.  *See, e.g., Swenson*, 271 F.3d at 1189–1190.  Hellums also contends that

17   Mihok's investigation into the parking lot incident was inadequate.  Considering that

18   Hellums had resigned by the time Ms. Mihok returned from vacation and that no other

19   incident occurred, Hellums fails to show that a formal investigation was even necessary.

20   *See id.* at 1197 ("The harassment stopped." And, ". . . the purpose of Title VII is

21   remedial—avoiding and preventing discrimination—rather than punitive.").  Therefore,

22

1   the Court grants Macy's motion on this claim because Hellums fails to show that there

2   are questions of fact whether Ms. DiPierro's action may be imputed to Macy's.

3   **C.     Constructive Discharge**

4          "To prove constructive discharge, [Plaintiff] must show (1) the employer

5   deliberately made the employee's working conditions intolerable, (2) a reasonable person

6   would be forced to resign, (3) the employee resigned solely because of the intolerable

7   conditions, and (4) the employee suffered damages." *Crownover*, 165 Wn. App. at 131.

8   "The word 'deliberately' requires a deliberate act of the employer in creating the

9   intolerable condition." *Coville v. Cobarc Servs., Inc.*, 73 Wn. App. 433, 440–441 (1994).

10         In this case, Hellums argues that there are questions of fact on the issue of whether

11  her working conditions were intolerable.  The Court disagrees and finds that no

12  reasonable juror could conclude that Hellums has submitted evidence to show intolerable

13  working conditions.  First, the grabbing was not reported until months after it occurred,

14  and Hellums worked with Ms. DiPierro that entire time.  Any argument that the

15  conditions were intolerable during that period is unworthy of belief and fails to show that

16  Macy's committed a deliberate act.  Thus, the applicable time frame is from August 3,

17  when Macy's became award of the incidents, to August 8, Hellums's final day at the

18  store.  The only event that occurred during this time was the alleged parking lot incident,

19  and there is no evidence whatsoever that Macy's deliberately caused that act.  Moreover,

20  in Hellums's resignation letter (Dkt. 28-6 at 10), she lists multiple reasons for her

21  departure, only one of which was the fallout from the alleged harassment incidents.  *See*

22  *Crownover*, 165 Wn. App. at 149 (employee must show that "employee resigned solely

1  because of the intolerable conditions").  Therefore, the Court grants Macy's motion

2  because Hellums has failed to meet her burden on this claim.

3                                    **IV.    ORDER**

4         Therefore, it is hereby **ORDERED** that Macy's motion for summary judgment

5  (Dkt. 22) is **GRANTED**.  The Clerk shall enter Judgment for Macy's and close this case.

6         Dated this 25th day of September, 2014.

7

8  _____

9  BENJAMIN H. SETTLE
   United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22